**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| **REGIS HEARN, JR.,** <br> 67 Diamond Road <br> Irvine, CA 92620 <br><br>        **Plaintiff** <br><br> **And** <br><br> **Regis W. Hearn, in his capacity as next of kin to his minor daughter,** <br> 67 Diamond Road <br> Irvine, CA 92620 <br><br>        **Plaintiffs,** <br><br> **v.** <br><br> **DICK'S SPORTING GOODS, INC.,** <br> 5700 Dearfield Road <br> Mason, OH 45040 <br> c/o Statutory Agent <br> Corporation Service Company <br> 3366 Riverside Drive <br> Upper Arlington, OH 43221, <br><br> **and** <br><br> **GERALD E. ALBRIGHT,** <br> 5700 DEERFIELD BLVD. <br> MASON, OH 45040, <br><br>        **Defendants.** | **Civil Action:** <br><br>  **JUDGE:** <br><br><br> **MAGISTRATE JUDGE** <br><br><br><br> **JURY DEMAND ENDORSED HEREIN** |

1

## COMPLAINT

### I.   PRELIMINARY STATEMENT

1.      This action seeks economic, compensatory, and punitive damages; declaratory, injunctive, and equitable relief; prejudgment and post-judgment interest; and attorneys' fees and costs for Defendants engaging in the discriminatory treatment of Plaintiffs based on their race, as they were denied full enjoyment, advantages and privileges of a public accommodation and benefits of a contractual relationship, when Plaintiffs and their father attempted to enter Defendants' public retail accommodation and their entry was obstructed by Defendant Gerry E. Albright; they were informed that merchandise they intended to buy was unavailable even though it was in stock; and they were harassed and followed during their time in Defendants' public retail facility, while white individuals were not denied these same privileges, in violation of 42 U.S.C. §§1981 and 1982, R.C. 4112.02(G),  and Ohio common law.

### II.   JURISDICTION AND VENUE

2.      This Court has jurisdiction over this action by virtue of 28 U.S.C. §§ 1331 (federal question); 1343 (civil rights); and 1367 (supplemental jurisdiction).

3.      Declaratory, equitable, and injunctive relief is sought pursuant to 28 U.S.C. §§ 2201; 2202.

4.      Economic, compensatory, and punitive damages may be awarded under 42 U.S.C. §§1981 and 1982, and Ohio common law.

5.      Costs and attorneys' fees may be awarded pursuant to 42 U.S.C. §§§ 1981, 1982, and 1988;  R.C. 4112.99; Fed. R. Civ. P. 54; and Ohio common law.

6.      Venue lies in this forum pursuant to 28 U.S.C. § 1391(b) and S.D. Civ. R. 82.1, because the claims arose in the City of Mason in Warren County, Ohio, where Defendants' retail

store is located and where Plaintiffs were residents at all relevant times.

### III.    PARTIES

7.    Plaintiff Regis Hearn, Jr. ("Plaintiff Regis, Jr.") is a black male who reached the age of majority when he turned 18-years-old on April 15, 2025, the son of Plaintiff Regis W. Hearns ("Plaintiff Hearn"), and a victim of Defendants' discriminatory acts against him on June 11, 2020, at Dick's Sporting Goods, Inc., located at 5700 Deerfield Blvd., Mason, Ohio. He was a resident of Warren County at all relevant times.

8.    Plaintiff Regis W. Hearn is a black male who is next of kin and the natural father of a black 13-year-old daughter and was present when Defendants committed discriminatory acts against her and her brother on June 11, 2020, at Dick's Sporting Goods, Inc., located at 5700 Deerfield Blvd in Mason, Ohio. He was a resident of Warren County at all relevant times.

9.    Defendant Dick's Sporting Goods, Inc. ("DSG") is a private for profit corporation registered in the State of Ohio that owns and operates retail stores in Ohio, including the establishment at 5700 Deerfield Blvd in the City of Mason, Ohio ("the Mason Store") wherein Plaintiffs' claims arose, and Defendant Dick's Sporting Goods, Inc. was the employer of Defendant Gerald E. Albright at the time of the incident.

10.    Defendant Gerald E. Albright ("Defendant Albright") is a white male who was a resident of Warren County, Ohio when he committed discriminatory acts against Plaintiffs on June 11, 2020, based on their race, and was an employee of Dick's Sporting Goods, Inc., located at 5700 Deerfield Blvd. in Mason, Ohio at the time of the incident.

3

IV.  **FACTS**

**Plaintiff Regis W. Hearn's Minor Daughter And Next Of Kin.**

11.  Plaintiff Regis W. Hearn's minor daughter and next of kin ("Plaintiff's minor daughter") was 8-years-old and in third grade when she accompanied her father and brother, Plaintiff Regis Jr., to Dick's Sporting Goods Store, Inc., on June 11, 2020.

12.  Plaintiff Hearn's minor daughter had a bicycle with a flat tire that needed an inner tube, and, just two days prior, her father purchased a bicycle from Defendants' store, paid for it to be assembled there, and wanted to check on the status of the assembly.

13.  Plaintiff Hearn drove to the Mason DSG store at 5700 Deerfield Blvd, with his minor daughter and Plaintiff Regis, Jr.

14.  Plaintiff Hearn parked his vehicle, and all three walked toward the entrance of the store.

15.  Before they reached the sidewalk at the front entrance of the store, a man (later identified as Defendant Gerald E. Albright), stopped them and asked, "Can I help you" or used words to that effect.

16.  When Plaintiff Hearn responded that he was there to purchase an inner tube for his minor daughter's bicycle, Defendant Albright pretended to talk to someone on a radio device and then falsely claimed that the store did not have any inner tubes for sale.

17.  Defendant Albright, identifying himself as the store manager, continued to interfere with Plaintiffs and their father as they entered the store, even after Plaintiff Hearn informed him that he purchased a bike at DSG two days prior and wanted to check on the status of assembly.

18.  Defendant Albright then falsely claimed that the store did not have any bikes for sale.

19. Plaintiff's minor daughter saw the interaction between her father and Defendant Albright, whom she described as "rude."

20. Plaintiff's 8-year-old minor daughter indicated that her father "went to go pick up his bike, but the man kept wanting to cut him off like when he was like about to go into the store," referring to Defendant Albright as "the man".

21. Plaintiff's minor daughter did not see Defendant Albright stop white individuals in the parking lot and obstruct the entrance before they entered the DSG store, though white individuals were entering and exiting the store.

22. Defendant Albright followed Plaintiffs after they entered the DSG store and continued to claim that the store had no bicycles or inner tubes for sale.

23. Plaintiff's minor daughter described her father's encounter with Defendant Albright as my dad was like 'why is this man harassing me,'" referring to Defendant Albright as "this man".

24. Plaintiffs and their father eventually maneuvered their way around Defendant Albright who was at the front entrance and walked toward the back of the store where bicycles were repaired and bicycle parts were sold.

25. When Plaintiffs reached the back of the store, Plaintiff Hearn interacted with DSG Associate Drew LNU ("Associate Drew"), who previously sold him the assembly service for the bike, and DSG Associate Evan LNU ("Associate Evan").

26. When Plaintiff Hearn, referring to Defendant Albright, asked them "What's up with that guy?", one of them responded, "Don't worry about Gerry. He's a racist."

27. Associate Drew advised Plaintiffs that the store had inner tubes and bicycles for sale, showed them where the merchandise was located, and advised that he needed to look at the bike with the flat tire to determine what was needed to repair it.

5

28. Plaintiffs returned to their car to get the bicycle and entered the store again, this time with the bicycle.

29. Defendant Albright was hovering around the front entrance inside of the store and watched Plaintiffs as they entered the store again.

30. As Plaintiffs headed to the back of the store with Plaintiff Hearn in front, followed by Plaintiff Regis, Jr. and his minor daughter with the bicycle, Defendant Albright watched them from the front of the store for a few seconds, and then began to follow them as they walked down an aisle.

31. Plaintiff's minor daughter watched Defendant Albright approach them, again insisting that the store had no inner tubes or bikes for sale, and demanding to know why they were there.

32. Plaintiff's minor daughter described the interaction as, "and then my dad -- and he said what are you doing here. And he said oh, I'm looking for tubes for my daughter's bike. He said oh, we don't have any tubes, but the man back there had already said we had tubes" referring to Defendant Albright as "he" and "the man back there" as Associate Drew LNU..

33. Plaintiff's minor daughter wondered why Defendant Albright stopped Plaintiffs when she saw white people who were not stopped.

34. Plaintiffs continued to walk down the aisle toward the back of the store, with Defendant Albright walking a few steps behind them.

35. Plaintiff Hearn grew increasingly concerned about Defendant Albright's harassing behavior and was uncomfortable about being followed, especially given that his 8-year minor daughter and 13-year-old son, Plaintiff Regis, Jr., were with him.

6

36.     June 11, 2020, the date of the DSG incident, was less than two weeks after George Floyd, a black man, was murdered by a Minneapolis police officer, and that murder had started with a sales transaction he had in a convenience store and resulted in nationwide protests and increased racial tensions. Regis W. Hearn discussed the Floyd murder with his children before June 11, 2020, and the family became more sensitive then ever about racism and potential violence.

37.     Because Plaintiff Hearn was also a black man making a sales transaction in a store and had his children with him, he was concerned about Defendant Albright's behavior and what he might do next, because he had tried to block Plaintiffs' entry into the store, followed them, and lied about the store having inner tubes and bicycles.

38.     Plaintiff Hearn was so concerned that he discreetly called a friend and instructed her  to call the police and send them to the DSG Mason store.

39.     Plaintiff's minor daughter was at her father's side during his interactions with Defendant Albright, she was anxious and afraid, and she saw Warren County Sheriff's deputies arrive.

40.     The police arrived at DSG, spoke with Plaintiff Hearn, and then took statements from several witnesses, including another DSG store employee, Natalie Abel ("Ms. Abel").

41.      Ms. Abel confirmed Plaintiff's version of events, including that she thought Defendant Albright tried to prevent him and his children from entering the store.

42.     In a subsequent statement, Ms. Abel said that "Albright tells us to watch black people because they steal stuff."

43.     Plaintiffs left the store shaken, confused and humiliated, and the discriminatory treatment so disturbed them that they did not even consummate the purchase of the inner tube, which was in stock, or learn when the assembly of the purchased bike would be done.

7

44.     After the incident, Plaintiff's 8-year-old minor daughter was upset, "[B]ecause I feel like that knowing like no white people get stopped and here, like looks for us, just for our color, black people, and people are more than just a color."

45.     Defendant Hearn saw changes in his daughter, as she became increasingly introverted, sullen and her self-esteem plummeted.

46.     Plaintiff's minor daughter indicated that she was afraid to be black.

47.     She subsequently received counseling at the Cincinnati Children's Division of Behavioral Medicine and Clinical Psychology.

48.     Defendants' discriminatory acts are the direct and proximate cause of the emotional distress and foreseeable harm suffered by Plaintiff Hearn's daughter and next of kin.

49.     Defendant DSG's negligent hiring and retention of Defendant Albright is the proximate cause of the emotional distress and foreseeable harm suffered by Plaintiff Hearn's daughter and next of kin.

**Plaintiff Regis Hearn, Jr.**

50.     Plaintiffs incorporate, as if fully realleged, paragraphs 1-49 of this Complaint.

51.     Plaintiff Regis Hearn, Jr. was a  13-year-old incoming freshman in high school when he accompanied his father and 8-year-old sister to Dick's Sporting Goods Store, Inc., on June 11, 2020.

52.      Plaintiff Regis, Jr. recalled that he and his "little sister" would "always go bike riding and her tire was messed up. And so then when we went to go to like get her bike fixed, we tried to walk in, and then I forgot the guy's name too, we were trying to walk in and it's like every time we tried to proceed, he just kept getting in front of us so we couldn't walk through," referring to Defendant Albright as "he".

8

53. Plaintiff Regis, Jr. further recalled, "Then when we finally got through, we finally got to the back. And then he had said --when we were in the front, he said there were no tubes to fix the bike, but then when we finally got back there, one of the workers said there was tubes and then he, I guess, lied about it," referring to defendant Albright as "he".

54. Plaintiff Regis, Jr. saw the police arrive at the DSG store and talk to his father and DSG store employees.

55. When Plaintiff Regis, Jr. watched the police talk to his father he became concerned, "probably because like considering my age and just looking around, I didn't really know what was going on at the time, so I was just like -- not like --probably like mixed with a whole lot of emotions going on, scared, confused".

56. Plaintiff Regis Jr. recalled that for him it wasn't a matter of safety, "Yeah, it was honestly it was just like -- because when we -- before we walked in, there were already people walking in and he didn't stop them, but then when he saw us, he got in front of us".

57. The man (Defendant Albright) who stopped Plaintiffs was like "what do you need like. It was like we were getting in his way of something. Like why are you here? Like what do you need. Like just like try to hurry up, get in and go type of thing" according to Plaintiff Regis Hearn, Jr.

58. He recalled that when Defendant Albright spoke with Plaintiffs he got straight to the point, "like why are you here. What do you need?" and the tone of voice "was like just why are you here?"

59. Plaintiff Regis Jr. left the store with his sister and father feeling "scared" and "confused" as he tried to figure out what had just happened.

60.     The June 11, 2020 encounter between Plaintiffs and DSG was newsworthy on television and in print, especially in light of the George Floyd incident.

61.     Plaintiff Regis Jr.'s classmates teased him about the incident and made derogatory comments about his father, so much so, that his father transferred him to a different school.

62.     Plaintiff Regis Jr. received counseling at the Cincinnati Children's Division of Behavioral Medicine and Clinical Psychology.

63.     Defendants' discriminatory acts are the direct and proximate cause of the emotional distress and harm suffered by Plaintiff Regis Jr.

64.     Defendant DSG's negligent hiring, training and retention of Defendant Albright is the proximate cause of the emotional distress and foreseeable harm suffered by Plaintiff Regis Jr.

**General Facts**

65.     Plaintiffs incorporate, as if fully realleged, paragraphs 1-64 of this Complaint.

66.     DSG completed an internal investigation of the events that happened with Plaintiffs and Defendant Albright at the DSG Mason store on June 11, 2020.

67.     Plaintiffs discovered that the way they were treated was not an isolated event, as DSG's Mason store had a systemic practice of discriminating against black customers.

68.     The Mason Assistant Store Manager, Dave Reusser ("Mr. Reusser"), thought that people of color, black people specifically, were likely to be thieves.

69.     When a black individual entered the store, Mr. Reusser often ordered employees to broadcast on the radio that these individuals should receive "exceptional customer service," which was a code phrase for suspected shoplifters.

10

70.     Additionally, management at the DSG Mason store created their own catch phrase, "Code Word Marshmallow," and had been training employees to use it for suspected shoplifters at least since 2018.

71.     In practice, employees would call out over the radio, "We have a Marshmallow in the store" or "There's some marshmallows just came into the front door. Keep an eye out. Provide exceptional service."

72.     Assistant store managers Dave Reusser and Pat Funke used the two code phrases, instructed employees to use them when they saw black customers, and Pat Funke indicated that they were most often used for people of color.

73.     Defendants' General Manager, Kyle Depler, was also aware of the use of code words and admitted he did nothing to stop it.

74.     Defendants' Human Resources Manager, Ramon Malavet, who was subsequently fired, admitted "Athletes of Color" like the Hearns, were "disproportionally identified as exhibiting suspicious behavior which [led] to them being engaged more often with 'Exceptional Customer Service.'"

75.     Defendants issued a statement to Fox News 19 that read in pertinent part, "We do not tolerate racism of any kind, and the way we treated Mr. Hearn was unacceptable. We have apologized to Mr. Hearn for what happened and extend our deepest apologies to his entire family."

76.     DSG fired three employees, one of whom was Defendant Gerald E. Albright.

77.     Defendants temporarily closed the DSG Mason store and conducted bias training for the remaining employees.

78.     Plaintiff Hearn filed a racial discrimination charge with the Ohio Civil Rights Commission and a Probable Cause Determination was issued prior to enactment of Ohio HB 352.

11

79.    The Ohio Civil Rights Commission found that Mr. Hearn was "subjected to racial behavior" by DSG and thereby "unlawfully denied the full enjoyment of the accommodations, advantages, facilities, and privileges" of its Mason store, a place of public accommodation as defined under Ohio Law.

80.    In attempting to thwart a new contract with DSG for the sale of an inner tube and enforce a contract already made for the benefit of Plaintiff Hearn's children, DSG's agent, Defendant Albright, who was working within the scope of his employment and in furtherance of DSG's interests at all relevant times, denied the children an equal right to enjoyment of a public accommodation.

## V.  CLAIMS FOR RELIEF

### A.  <u>First Claim – Ohio Civil Rights Act, R.C. 4112 *et. seq.*</u>

81.    Plaintiffs incorporate, as if fully realleged, paragraphs 1- 80 of this Complaint.

82.    Under § 4112.02(G) of the Ohio Civil Rights Act, it is unlawful for "any proprietor [i.e. owner] or any employee, keeper, or manager of a place of public accommodation to deny to any person… the full enjoyment of the accommodations, advantages, facilities, or privileges of the place of public accommodation" based on race.

83.    Defendants' discriminatory acts denied Plaintiffs of "the full enjoyment of the accommodations, advantages, facilities, or privileges of the place of public accommodation" based on their race, black, in violation of the Ohio Civil Rights Act, R.C. 4112 *et. seq*.

### B.  <u>Second Claim – Negligent Supervision</u>

84.    Plaintiffs incorporate, as if fully realleged, paragraphs 1-83 of this Complaint.

85.     Defendant Albright and Defendant DSG had an employment relationship at all relevant times, wherein  Defendant Albright acted as an employee and agent of DSG in furtherance of their interests and within the scope of his duties at the DSG Mason Store.

86.     Defendant DSG had actual and/or constructive knowledge of Defendant Albright's incompetence and discriminatory acts, as Defendants' General Manager, Kyle Depler, and other members of management were aware of the discriminatory practices at Defendant DSG's Mason store and did nothing to stop them.

87.     Defendant DSG failed to train and monitor its employee, Defendant Gerald Albright, and caused foreseeable harm to Plaintiffs as a result of Defendant DSG's negligent supervision.

**C.    <u>Third Claim – Reconstruction Act, Equal Rights Under the Law, 42 U.S.C. §§1981,1982.</u>**

88.     Plaintiffs incorporate, as if fully realleged, paragraphs 1-87 of this Complaint.

89.     Plaintiff Hearn came to DSG to enter into a contractual relationship for the benefit of his minor child and next of kin, and his son.

90.     Under U.S.C. §§1981 and 1982, all persons within the jurisdiction of the United States shall have the same right to make and enforce contracts, which includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

91.     Defendants deprived Plaintiffs of the right to enjoy all benefits, privileges, terms, and conditions of the contractual relationship in violation of 42 U.S.C, §§1981 and 1982.

**VI.     <u>Prayer for Relief</u>**

WHEREFORE, Plaintiff prays that this Court:

a.      declare that Defendants discriminated against black Plaintiffs based on their race in violation of 42 U.S.C. §§ 1981 and 1982, R.C 4112 *et. seq*., and Ohio common law, and negligently trained or supervised Defendant Gerald E. Albright;

b.      order injunctive and equitable relief;

c.      pre-and post-judgment interest;

d.      award compensatory and punitive damages in excess of $75,000;

e.      award reasonable attorneys' fee and costs; *and*,

f.      grant such other relief as the Court may deem appropriate.


Respectfully submitted,


By: */s/ Helen M. Robinson*
Helen M. Robinson (0097070)
(*hrobinson@marshallforman.com*)
John S. Marshall (0015160)
(*jmarshall@marshallforman.com*)
Edward R. Forman (0076651)
(*eforman@marshallforman.com*)
Samuel M. Schlein (0092194)
(*sschlein@marshallforman.com*)
Madeline J. Rettig (0098816)
(*mrettig@marshallforman.com*)
MARSHALL & FORMAN LLC
250 Civic Center Dr., Suite 480
Columbus, Ohio 43215-5296
(614) 463-9790
Fax (614) 463-9780

**OF COUNSEL:**
Louis A. Jacobs (002101)
(*LAJOhio@aol.com*)
177 19th St., Apt. 9C
Oakland, CA 94612
(614) 203-1255
Fax (510) 250-9007


**JURY DEMAND**

Plaintiff requests a jury on all claims, defenses, or factual issues triable by a jury.

By: */s/ Helen M. Robinson*
Helen M. Robinson (0097070)


14